IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                 **Case No. 09-40077-04-RDR**

ANTHONY MAURICE HODGES,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is presently before the court upon the following motions filed by defendant Anthony Maurice Hodges: (1) amended motion to preclude creation of jailhouse informant testimony; (2) motion in limine to preclude use of alleged Fed.R.Evid. 404(b) evidence; (3) motion to suppress vehicle search; and (4) motion to dismiss for lack of speedy trial. The court has held a hearing on these motions and is now prepared to rule.

This case arises from a traffic stop of two of Hodges' co-defendants: Eddie Raul Collazo, Jr. and Timothy Wayne Stein II. On July 21, 2009, Collazo and Stein were stopped by a Shawnee County Sheriff's Officer. A subsequent search of the car led to the discovery of a gasoline can containing phencyclidine (PCP). Stein and Collazo subsequently agreed to a controlled delivery of the gasoline can and PCP to the intended recipient in Kansas City. This delivery ultimately led to the arrest of co-defendant Reginald Terrance Stewart when he arrived and took physical possession of

the gasoline can. Stewart subsequently agreed to cooperate in the investigation and identified Hodges as the person who had directed him to take possession of the PCP. On August 12, 2009, Stein, Collazo, Stewart and Hodges were charged together by sealed indictment. They were charged with possession with intent to distribute one kilogram or more of PCP in violation of 21 U.S.C. § 841(a)(1). Since that time, Collazo, Stein and Stewart have entered pleas of guilty.

**AMENDED MOTION TO PRECLUDE CREATION OF "SNITCH" TESTIMONY AND MOTION IN LIMINE TO PRECLUDE TESTIMONY OF COLLAZO ON ISSUE OF IDENTIFICATION OF DEFENDANT HODGES' VOICE**

The defendant seeks to exclude any testimony by Collazo that, while incarcerated in the same unit of the facility at Leavenworth, Kansas operated by Corrections Corporation of America (CCA), he had the occasion to hear the defendant's voice and recognized it as the voice he had heard over the telephone during the calls arranging the controlled delivery of the PCP at issue in this case. Relying on United States v. Henry, 447 U.S. 264 (1980), the defendant argues that the placement of Collazo with him in the same prison unit constituted interrogation in violation of his Sixth Amendment right to counsel.

*Findings of Fact*

1. Collazo and Stein were initially arrested on July 21, 2009 following a traffic stop after a gasoline can containing PCP was found in the trunk of their car. At that time, they agreed to

cooperate with law enforcement and participate in a controlled delivery of the PCP. During that controlled delivery, Stewart was arrested.

2. On July 22, 2009, Stein, Collazo and Stewart were charged together by complaint with one count of possession with intent to distribute PCP. They had their first appearances on July 23, 2009 and were appointed counsel. Stein and Collazo were ordered released on conditions of release. Stewart was subsequently detained. After his first appearance, Stewart communicated through counsel a willingness to cooperate in the investigation and identified Hodges as the person who had directed him to take possession of the PCP.

3. On August 12, 2009, Stein, Collazo, Stewart and Hodges were charged by sealed indictment with possession with intent to distribute PCP in violation of 21 U.S.C. § 841(a)(1). A warrant was issued for Hodges' arrest on the sealed indictment.

4. On August 17, 2009, Hodges was arrested. All defendants had their first appearances on August 18, 2009. Stein and Collazo waived personal appearance, appeared by counsel, and remained on pretrial release. Stewart and Hodges were detained.

5. Following their initial cooperation during the controlled delivery, Collazo and Stein had little contact with law enforcement. Anthony Archer, Special Agent with the Drug Enforcement Administration (DEA), talked with Collazo and Stein

after their initial arrests. Both said they would cooperate. However, Agent Archer only subsequently spoke with Collazo when he called to ask if Agent Archer had possession of his driver's license. Stein called Agent Archer one or two times to inform him that he had some additional information. Agent Archer told him to provide it to his counsel who would then provide it to him.

6. On October 26, 2009, Stewart entered into a plea agreement with the government providing, <u>inter</u> <u>alia</u>, that he would cooperate and testify, as needed, in the case. On that date, the government's counsel sent a letter to the United States Marshal's Service (USMS) informing them of Stewart's agreement to cooperate and requesting that he be held separately from Hodges.

7. On February 23, 2010, a hearing was held on pretrial motions filed by the defendants. Collazo and Stein had filed motions to suppress. After the hearing, Collazo was taken into custody by the USMS pursuant to a warrant issued as a result of a petition alleging violations of his pretrial release. On February 24, 2010, Collazo's pretrial release was revoked, and he was ordered detained.

8. On March 10, 2010, the court ruled on the defendants' pretrial motions and, <u>inter</u> <u>alia</u>, denied the motions to suppress filed by Collazo and Stein.

9. On or about April 8, 2010, counsel for Collazo communicated to government counsel that his client wanted to enter

into a plea agreement with the government providing, inter alia, that he would cooperate and testify, as needed, in the case. Collazo's counsel also told government counsel that Hodges had recently been moved into the same housing unit at CCA with his client. Government counsel then sent a letter to the USMS informing them of Collazo's agreement to cooperate and requesting that he be held separately from Hodges. Collazo entered into a plea agreement with the government and entered his guilty plea to the indictment on April 14, 2010.

    10. Hodges was placed at CCA in Leavenworth on August 18, 2009. CCA is a private prison that has a contract with the USMS to house prisoners. Harold Foskett, the classification coordinator at CCA, determines where inmates are housed. Hodges was held in various units until he was placed in W unit on April 8, 2010 at 11:18 a.m. He was moved to W unit because S unit, where he had formerly lived, had been closed due to low inmate population. Collazo was placed at CCA in Leavenworth on February 22, 2010. He was held in various units until he was placed in W unit on April 8, 2010, at 11:16 a.m. He was also moved to W unit because his prior unit, T unit, had been closed due to low inmate population. After the placement of Collazo and Hodges in W unit, Foskett received notice from the USMS that Collazo and Hodges should be separated. Collazo was eventually moved to F unit at 7:03 p.m.

*Conclusions of Law*

1. It is well-settled that "[a]ny secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crimes." Massiah v. United States, 377 U.S. 201, 205 (1964) (quoting People v. Waterman, 9 N.Y.2d 561, 565 (1961)).

2. In Henry, the government used a paid informant, who was serving time for forgery, to obtain information about Henry. The government had admonished him to "be alert to any statements made by federal prisoners [including Henry, with whom the informant was housed in the same cellblock], but not to initiate any conversation with or question Henry regarding the bank robbery [for which he had been previously indicted]." Henry, 477 U.S. at 266. As a result of conversations the informant had with Henry, the government obtained incriminating evidence, which was used at trial to convict him.

The central question in Henry was "whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements from Henry within the meaning of Massiah." Id. at 270. In concluding that a government agent had elicited such statements, the Supreme Court relied on three factors: (1) the informant was acting under instructions from the government and was paid for his services; (2) the informant "was ostensibly no more than a fellow

6

inmate of Henry," which caused Henry to trust him and thus be more likely to make incriminating statements; and (3) Henry was in custody and under indictment at the time the informant conversed with him. Id. The Court found it irrelevant that government officials had cautioned the informant not to ask Henry any questions: "Even if the agent's statement that he did not intend that [the informant] would take affirmative steps to secure incriminating information is accepted, he must have known that such propinquity likely would lead to that result." Id. at 271. In these circumstances, the Supreme Court held that the government agent's conversation with Henry amounted to "deliberate elicitation" under Massiah.

3. To show that the government violated his Sixth Amendment rights by obtaining and using Collazo's testimony, Hodges must show that Collazo was acting as an agent of the government when he heard Hodges and he made some efforts to "stimulate conversations." United States v. Taylor, 800 F.2d 1012, 1015 (10th Cir. 1986), cert. denied, 484 U.S. 838 (1987). The determination of whether an individual is a government agent for the purposes of the Sixth Amendment right to counsel must be made under the facts and circumstances of each case. Id.

4. A thorough review of the evidence shows that Collazo was not a government agent at the time he heard Hodges speak at CCA. Although Collazo had initially cooperated with the government after

7

his arrest, he took no further steps to assist the government after that time. In fact, he made efforts to counter the government's case against him by pursuing a motion to suppress. The government, unlike in Henry, made no efforts to talk with Collazo or to persuade him to work on their behalf. No instructions or directions had been given to Collazo by any government official. In addition, there is no evidence that the government had any role in placing Collazo in the same unit as Hodges. The decision which resulted in the placement of the two men in the same unit was merely an administrative coincidence. Foskett, the person in charge at CCA of placing inmates in the various units, had no contact with the United States Attorney's Office or the DEA concerning the placement of these individuals until he received a communication from the USMS that they should be separated. He took prompt action to separate them after he received the notice.

5. In sum, the court finds that Collazo was not an agent at the time that he heard Hodges speak. Thus, there was no violation of Hodges' Sixth Amendment rights. The defendant's motion must be denied.

**MOTION IN LIMINE TO PRECLUDE USE OF ALLEGED RULE 404(B) EVIDENCE**

The defendant seeks an order precluding the government from using as evidence at trial the fact that bottles containing a residue of PCP were found in a Kansas City, Kansas residence that the defendant was known to frequent and where the defendant was

observed on the date of his arrest immediately prior to this arrest. The defendant suggests that the government cannot "demonstrate in any meaningful way how said evidence relates to any of the exceptions listed in Rule 404(b)." The government contends that this evidence is relevant to show motive, intent, plan, knowledge and absence of mistake. The government elaborates as follows: "[this evidence] is probative circumstantial evidence of: the defendant's motive to obtain a large shipment of liquid PCP for repackaging into small bottles and distribution; his intent for the PCP, once obtained; his plan with regard to the shipment of PCP at issue; his knowledge of liquid PCP; and the absence of any mistake on his part in arranging to take delivery of the red gasoline can containing the liquid PCP."

Rule 404(b) proscribes admission of evidence of prior crimes, wrongs, or acts if offered "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. To admit evidence of "other acts" under Rule 404(b), a court must make a four-factor inquiry: "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so

requests." United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006).

The court initially notes some concern with the relevance and purpose offered by the government concerning this evidence. The government's argument seems to suggest that this evidence is circumstantial evidence intrinsic to the crime charged. However, "it is well settled that Rule 404(b) does not apply to ... evidence that is intrinsic to the crime charged." United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotation and alteration omitted). "Generally speaking, intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." Id. (quotation and alteration omitted).

Nevertheless, the court finds it unnecessary to consider this issue. Even if relevant and offered for a proper purpose, Rule 404(b) evidence may still be excluded under Rule 403 if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. "In determining whether evidence is properly admitted under Rule 403, we consider (1) whether the evidence was relevant, (2) whether it had the potential to unfairly prejudice the defendant, and (3) whether its probative value was

substantially outweighed by the danger of unfair prejudice." United States v. Cerno, 529 F.3d 926, 933 (10th Cir. 2008). To be inadmissible under Rule 403, evidence must do more than "damage the Defendant's position at trial," it must "make[ ] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [sic] of the crime charged." United States v. Tan, 254 F.3d 1204, 1211-12 (10th Cir. 2001) (quotations omitted).

In examining what is presently before the court, we are not persuaded that the probative value of this evidence is outweighed by its prejudicial value. The efforts of the government to tie the evidence found at the house to the defendant are tenuous at best. The evidence before the court fails to demonstrate that the defendant had any knowledge of the PCP residue found at the Kansas City, Kansas residence. The court shall accept that the defendant was a frequent visitor to the house because even the defendant's counsel appeared to agree with that allegation. However, there is no evidence to show that the defendant had any contact with the vials of PCP residue. There was no showing where they were found in the house. Moreover, the little evidence that was produced demonstrated that several people resided at this house. Based upon the rather slender, if not entirely remote, connection between the presence of these vials in a Kansas City, Kansas residence that the

11

defendant did frequent but not reside at and the charge in this case, the court shall grant the defendant's motion in limine and exclude this evidence at trial.

**MOTION TO SUPPRESS VEHICLE SEARCH**

The defendant seeks to suppress the evidence that was taken from his vehicle following his arrest on August 17, 2009. Specifically, he seeks to suppress the cellular telephones and the information obtained from them as well as a receipt that was found.

Based upon the evidence offered at the hearing, the court reaches the following findings of fact and conclusions of law:

*Findings of Fact*

1. On August 12, 2009, the grand jury issued a superseding indictment in this case. In that superseding indictment, the defendant was charged with possession with intent to distribute PCP in violation of 21 U.S.C. § 841(a)(1). After receiving notice of the indictment, DEA Special Agent Archer took steps to arrest Hodges. He established surveillance at 2 p.m. on a house located in Kansas City, Kansas that Hodges was known to frequent. He noticed a vehicle in the driveway that he determined belonged to Hodges. At approximately 3 p.m., Agent Archer saw Hodges exit the house, enter his car, and drive away. Agent Archer followed Hodges' vehicle. He radioed the Kansas City, Kansas (KCK) police department, informed them of the arrest warrant for Hodges, and requested that they stop his vehicle and arrest him. Agent Archer

saw a KCK police patrol car stop Hodges' car. He turned his vehicle around and went back to the scene of the stop.

2. By the time Agent Archer arrived at the scene of the stop, Hodges was handcuffed and in the rear of the KCK patrol car. Agent Archer was told by a KCK police officer that Hodges had told them they could not search his car.

3. Agent Archer began to search Hodges' car. He believed that he was allowed to do so as a search incident to arrest. He was looking for the following items: drugs, weapons, cell phones and documents. He believed these objects were relevant to the charge of possession with intent to distribute PCP. He thought that the seizure of cell phones was appropriate because cell phones are common tools in the drug trade, plus cell phones had been used during the events that led to the charge in this case. He found two cell phones in the car. He also found a sales receipt that had a telephone number on it. He seized the receipt as well. He retained possession of the cell phones even though the telephone numbers for the cell phones seized did not match the telephone numbers that had been called during the events that led to the charge in this case. Moreover, he also was aware that the telephone number on the receipt did not correspond to any of the telephone numbers that had been dialed during the drug transaction. Through further investigation, Agent Archer was able to find that the information contained in the cell phones and the phone number

13

on the receipt were relevant to this case.

*Conclusion of Law*

1. "[T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." Terry v. Ohio, 392 U.S. 1, 20 (1968). "[S]earches conducted in the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-- subject only to a few specifically and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Here, the court must consider the search incident to a lawful arrest exception.

2. An officer may perform a warrantless search of a home incident to arrest, so long as the search is limited to the area within the arrestee's "immediate control," which means "the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969). The Supreme Court applied the holding in Chimel to occupants of automobiles in New York v. Belton, 453 U.S. 454 (1981). The Court held that an officer who arrests "the occupant of an automobile ... may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers found inside. Id. at 460.

3. The defendant, relying upon Arizona v. Gant, 129 S.Ct. 1710 (2009), contends that the search incident to arrest exception does not apply here because he was handcuffed and in a police car

when the search was conducted. The government argues that the exception is applicable because the officer could search the defendant's vehicle for evidence relevant to the crime of arrest which was possession with intent to distribute one kilogram of PCP.

4. In Gant, the Supreme Court clarified its prior opinions concerning the search incident to arrest exception. The Court explained that there are two instances in which a warrantless search incident to a lawful arrest is tolerable under the Fourth Amendment: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," and (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Gant, 129 S.Ct. at 1719 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004)).

In explaining the second instance in which a warrantless search incident to a lawful arrest is allowed, the Court stated:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, e.g., Atwater v. Lago Vista, 532 U.S. 318, 324, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); Knowles v. Iowa, 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But in others, including Belton and Thornton, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

Id. In citing Atwater (failure to wear seatbelt) and Knowles (speeding), the Court highlighted examples of cases involving "offense[s] for which police could not expect to find evidence."

15

Id. (holding that driving with a suspended license is also such an offense). The Court then cited Belton and Thornton (both drug offenses), which involved crimes for which police could expect to find evidence, as circumstances where the offense of arrest supplies the basis for the search.

5. The defendant here was being arrested for a drug offense. There is no question under the guidance of Gant and prior search incident to arrest cases involving automobiles that the search in this case was proper as a search incident to arrest. The officer's search of the car for evidence concerning the offense of arrest such as drugs, weapons, cell phones and documents was reasonable.

6. The defendant has also argued that the officer could no longer search the cell phones or keep the receipt after he learned that the cell phones were not the ones used in this transaction and the phone number on the receipt did not correspond to any of the phone numbers that were used during the events that led to the instant charge. The court finds no merit to this argument. The defendant has failed to offer any support for this position, and we are unable to find any. Once the officer searched and seized the items in the car, he was under no obligation to discontinue the search once he determined that the cell phones were not the ones used during the transaction that led to the charge in this case. The same can be said for the receipt that was found. Once the officer had authority to seize these items, then he could continue

to examine them.

7. Given the court's conclusion that the search of the defendant's vehicle was valid as a search incident to his arrest, we need not consider the government's alternative argument that the evidence would have inevitably been discovered during an inventory search.

8. Accordingly, the defendant's motion to suppress shall be denied.

**MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL**

The defendant seeks dismissal with prejudice because he contends that the Speedy Trial Act (STA) has been violated here. He asserts he has not been brought to trial within the time requirements of the STA. The government responds that there is no STA violation here. The government suggests, in the alternative, that if the court were to find a STA violation, the dismissal should be without prejudice.

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." United States v. Thompson, 524 F.3d 1126, 1131 (10th Cir. 2008). It generally requires that the trial of a defendant commence within seventy days from the later of the filing date of the information or indictment or the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). Certain defined periods of delay are automatically

excluded from the calculation of the seventy-day time limit. 18 U.S.C. § 3161(h)(1)-(7). The STA mandates dismissal of the indictment upon defendant's motion if the seventy-day period is exceeded. 18 U.S.C. § 3162(a)(2).

In this case, the speedy trial clock began running on August 18, 2009, the date of the defendant's first appearance before a judicial officer. The period from that date to the present is 279 days. The court finds that the following periods are excludable pursuant to 18 U.S.C. § 3161(h)(1)(D) because pretrial motions were pending: September 10, 2009 to February 23, 2010 [167 days]; and May 23, 2010 to June 14, 2010 [23 days]. Subsection (h)(1)(D) "excludes all time, regardless of reasonableness, between the filing of the pretrial motion and the hearing thereon, as well as all time following the hearing during which the court awaits the filing of additional materials by the parties that are needed for proper disposition of the motion." United States v. Mora, 135 F.3d 1351, 1355 (10th Cir. 1998). The court also finds that the following periods are excludable pursuant to 18 U.S.C. (h)(1)(H) because motions were under advisement by the court: February 24, 2010 to May 10, 2010 [15 days]; and June 15, 2010 to June 23, 2010 [9 days]. These periods of excludable time alone indicate that the defendant's rights under the STA have not been violated. Nevertheless, there are other periods of excludable time including the following periods because motions for continuances were granted

and the court found that the ends of justice served by the continuance outweighed the best interest of the public and the defendants in a speedy trial pursuant to 18 U.S.C. § 3161(h)(7)(A): September 25, 2009 to October 22, 2009 [28 days]; and April 26, 2010 to May 22, 2010 [27 days]. Thus, the court has found sufficient excludable time to deny the instant motion. In reaching this determination, we note that there may be other periods of excludable time, but we find it unnecessary to continue our study since we find no STA violation.

**IT IS THEREFORE ORDERED** that defendant's amended motion to preclude creation of "snitch" testimony (Doc. # 134) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion in limine to preclude use of alleged Fed.R.Evid. 404(b) evidence (Doc. #136) be hereby granted.

**IT IS FURTHER ORDERED** that defendant's motion to suppress search of his vehicle (Doc. # 138) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss for lack of speedy trial (Doc. # 140) be hereby denied.

**IT IS SO ORDERED.**

Dated this 23rd day of June, 2010 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge